103 So.2d 202 (1958)
Nathan GOLDSTEIN, Appellant,
v.
ACME CONCRETE CORPORATION, a Florida corporation, Appellee.
Supreme Court of Florida.
May 21, 1958.
Rehearing Denied June 24, 1958.
*203 Rassner, Miller & Roth, Miami, for appellant.
Jacobs & Reedy, Miami, for appellee.
DREW, Justice.
Nathan Goldstein, an employee of the general contractor in a housing project construction job, was injured when struck by a concrete mixer truck owned by Acme *204 Concrete Corporation. At the time of the injury the mixer was on the job for the purpose of pouring its load of ready mixed concrete into forms prepared by the general contractor. To recover for such injuries, Goldstein brought this action against Acme.
The question was immediately raised that Acme was a sub-contractor and not a third party against whom an independent action could be maintained under the Workmen's Compensation Act. § 440.39 (1), F.S.A. Depositions were taken, the matter was considered by the trial court and summary judgment was entered against Goldstein on the finding of the lower court that his remedy was exclusively under the Workmen's Compensation Act.
It is conceded by the parties that the record here is sufficient for us to pass upon and decide the ultimate question presented by this appeal, viz.: whether Acme was a sub-contractor. Our examination of the record sustains this view and we proceed to dispose of the issue.
The facts are not in conflict, and under the circumstances the question presented is one of law. Bossom v. Gillman, 70 Fla. 310, 70 So. 364; Nelson v. Montgomery Ward & Co., 312 U.S. 373, 61 S.Ct. 593, 85 L.Ed. 897. 53 Am.Jur., trial, Sec. 253.
There was no written contract between Acme and the general contractor. There was an oral agreement that during the period required by the contractor to complete the project of building some two or three thousand houses Acme would deliver to the job, and pour into forms previously prepared by the general contractor, ready mixed concrete at a fixed price. There is some evidence as to a variation of price shown on some delivery tickets but it is clear that these, if so made, were made in error. In any event this point is not of any consequence in our disposition of the case.
According to language printed on the delivery tickets, the concrete became the property of the general contractor when placed in the mixer. The driver of the mixer was engaged in delivery of concrete to the site of this job or others as instructed by Acme. When on the site of this job his only duty was to pour the concrete (a mechanical process) in forms that had been previously prepared by the general contractor and in the manner directed by the general contractor. Acme had nothing to do with tamping, leveling, smoothing or finishing the concrete or the removal of the forms after it had set. In fine, its sole responsibility was to deliver the ready mixed concrete to the job site and put it where the general contractor directed. We fail to see, from the facts in this case, where Acme was in any different position than if it had been delivering concrete blocks or bricks or other similar material. Nor can we distinguish any difference between Acme's status under the facts here and that of any other materialman from whom the general contractor purchases materials for inclusion in the project.
The mechanics' lien statutes are, of course, not decisive of this question by any means, but in both the mechanics' lien statutes (F.S. ch. 84, F.S.A.) and the Workmen's Compensation Act (Ch. 440) the lawmakers use similar phrasing in dealing with construction projects. We may assume that in both chapters they intended certain exact words or exact phrases to mean the same thing. In a broad sense the chapters are in pari materia and should, to the extent that an understanding of one may aid in the interpretation of the other, be read and considered together.
It is said in Ch. 84.01, F.S.A.:
"`Materialman' means any person who, under contract, furnishes materials to the owner, contractor, or sub-contractor on the site of the improvement or for direct delivery to the site *205 of the improvement or who specially fabricates materials for the improvement, and who performs no labor in the installation thereof."
We think the above language is a clear indication that Acme is not a "sub-contractor" in the legislative plan in either Chapter 84 or 440  nor does there appear to be any logical reason why it should be. The rule which restricts an employee of a sub-contractor to the provisions of the Workmen's Compensation Act for injuries received because of the negligence of the employees of the general contractor or other sub-contractors, is an extreme one (Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690), and should not be extended in such a manner that it could be said to apply to materialmen.
If we apply a test which seems to be generally accepted as a correct one for resolving the question of whether one is a materialman or a contractor, that is, the relative value of the material and labor supplied, the answer is clear that Acme is a materialman. Ferger v. Gearhart, 44 Cal. App. 245, 186 P. 376. Also see, for a description of a materialman, Curlett v. Aaron, 6 Houst., Del., 477, 478.
A case from another jurisdiction quite analogous is that of the Ohio Court in Rebisso, Inc., v. Frick, Ohio App., 108 N.E.2d 282, 283, where it was held that a septic tank manufacturer was a materialman even though the installation involved the use of its men to lower its three sections in place and cement them together.
Essentially, the relation of Acme and the general contractor is one of vendor and vendee. Compare Lindsey v. Willis, Fla.App., 101 So.2d 422. Also see Horovitz, "Injury and Death under Workmen's Compensation Laws," page 350.
Other questions are raised but, with the exception of the one as to costs, we see no reason to comment on them as the case must go back for a trial on the merits. On the question of taxing costs, the reversal of the summary judgment hereby ordered necessarily requires that the order assessing costs be also reversed with directions to vacate same. Upon final determination of this cause in accordance with the views herein expressed the lower court may consider and assess against the proper party all lawful costs herein.
Reversed and remanded.
TERRELL, C.J., and THOMAS, HOBSON and ROBERTS, JJ., concur.